# EXHIBIT B

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

ROGER TOUSSAINT, as President of Transport
Workers Union, Local 100, ED WATT, as Secretary Treasurer
of Transport Workers Union, Local 100, JAMES
MAHONEY, as the Director of the Transport
Workers Union Retirees Association, et al.,

## SUMMONS IN A CIVIL CASE

V.

JJ.WEISER INC., SANFORD J. COHEN, HARVEY T. GLUCK,
INTERBORO MUTUAL INSURANCE CO., MICHAEL J. FITZPATRICK
AND JOHN MEEHAN.

CASE NUMBER: CV

04 CV 02592

JUDGE MUKASEY

TO: (Name and address of defendant)

        J.J.Weiser Inc.,
        131 Mineola Blvd.,
        Mineola, NY 11501

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Thomas M. Kennedy
Kennedy, Schwartz & Cure, P.C.
113 University Place
New York, NY 10003

an answer to the complaint which is herewith served upon you, within _____ 20 (twenty) _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

*Jessica Roes*

(BY) DEPUTY CLERK

APR 0 5 2004

DATE

KENNEDY, SCHWARTZ & CURE, P.C.
113 University Place, 7th Floor
New York, New York 10003
Tel. (212) 358-1500
Thomas M. Kennedy (TK-0993)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ROGER TOUSSAINT, as President of Transport Workers
Union, Local 100, ED WATT, as Secretary Treasurer of
Transport Workers Union, Local 100, JAMES MAHONEY,
as the Director of the Transport Workers Union
Retirees Association, and JOSEPH ALLMAN,
BERNARD BEAVER, FRANK INGRAM,
LAVERNE STUCKEY, MAURICE SCHIERMAN, and
MATTHEW TARNOWSKI on Their
Own Behalf and on Behalf of All Other Similarly
Situated Persons,

JUDGE MUKASEY

04 CV 02592

                        Plaintiffs,

        -against-

**VERIFIED COMPLAINT**
**JURY TRIAL DEMANDED**

JJ WEISER INC., SANFORD J. COHEN, HARVEY T.
GLUCK, INTERBORO MUTUAL INSURANCE CO.,
MICHAEL J. FITZPATRICK AND JOHN MEEHAN

                        Defendants.
-------------------------------------------------------------X

The Plaintiffs, by their attorneys, Kennedy, Schwartz & Cure, P.C., allege as follows:

## INTRODUCTION

1.      Plaintiffs Roger Toussaint and Ed Watt are officers of Transport Workers Union,

Local 100 ("Local 100"). Plaintiff James Mahoney is the Director of the Retirees Association

formed from retired members of Local 100. The Retirees Association operates a retiree welfare

and insurance plan (the "Plan"), which includes a Limited Medical Expenses and Accidental

Death and Dismemberment Policy (the "Policy"), that is an employee benefits plan within the

meaning of the Employees Retirement Income Security Act, 29 U.S.C. § 1001, *et. seq*. Plaintiffs

Joseph Allman, Bernard Beaver, Frank Ingram, LaVerne Stuckey, Maurice Schierman, and

Matthew Tarnowski (collectively "the Individual Plaintiffs") are former members of Local 100,

current members of the Retirees Association and participants in the Plan. Defendants Michael J.

Fitzpatrick and John Meehan were Directors of the Association and fiduciaries of the Retiree

Welfare Plan who failed to discharge their fiduciary duties to the Plan and the participants of the

Plan. Defendants Sanford J. Cohen, Harvey T. Gluck, JJ Weiser Inc. and Interboro Mutual

Insurance Co., have, for many years, grossly overcharged the Plaintiffs for insurance benefits

provided through the Plan. Defendants have violated their fiduciary duty to Plaintiffs, engaged in

deceptive business practices, breached their actual and implied contracts, and committed acts of

fraud, and thereby bilked the Plaintiffs of millions of dollars from 1991 to the present.

## JURISDICTION

2.      Jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and 29 U.S.C.

§ 1132(a). Further, this Court has personal jurisdiction over each of the defendants based upon

New York Civil Practice Law and Rules Sections 301 and 302 since each Defendant resides or

did business in New York and/or transacted business in New York related to the causes of action.

This Court also has Supplemental Jurisdiction over the New York State law claims under 28

U.S.C. § 1367 since these claims are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.

## VENUE

3.      Venue is proper in this district under 28 U.S.C § 1391(b) because the Defendants'  –

conduct is alleged to have occurred within this district and because the Plan transacts business

within this district and 29 U.S.C. §1132 because the action is brought pursuant to the Employee

Retirement Security Income Act, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

## PARTIES

4.      Roger Toussaint is President of Local 100, which is an unincorporated labor

organization representing transit workers in the New York metropolitan area. Ed Watt is

Secretary Treasurer of Local 100. Local 100 is located at 80 West End Avenue, New York, New

York 10023. Local 100 is an employee organization in which employees participate and which

exists for the purpose of dealing, in whole or in part, with employers concerning an employee

benefit plan and is therefore an "employee organization" within the meaning of 29 U.S.C. §

1002(4).

5.      James Mahoney ("Mahoney") is the Director of Local 100's Retirees Association,

an unincorporated organization of retired transit workers and their spouses under the laws of

New York. The Retirees Association is located at 80 West End Avenue, New York, New York

10023. The Retirees Association and Local 100 have established, maintained and sponsored an

"employee welfare plan" within the meaning of 29 U.S.C. § 1002(1) and (3) for the purpose of

providing for its participants and their beneficiaries medical and hospital benefits as well as

benefits in the event of sickness, accident or disability. As Director, Mahoney is a fiduciary of

the employee welfare plan within the meaning of 29 U.S.C. § 1002(21)(A) because he exercises

discretionary management and control of Plan assets.

6.     Plaintiff Member Joseph Allman ("Allman") resides at 1400 Union Street, Brooklyn, New York 11213. He became a member of the Local 100's Retirees Association and a participant in its Plan within the meaning of 29 U.S.C. § 1002(7) and certificate holder under the Policy on or about January 1988 and remains a member, participant, and certificate holder through the present.

7.     Plaintiff Member Bernard Beaver ("Beaver") resides at 139-17232 Street, Laurelton, New York 11413. He became a member of the Local 100's Retirees Association and a participant in its Plan within the meaning of 29 U.S.C. § 1002(7) and certificate holder under the Policy on or about November, 1988 and remains a member, participant, and certificate holder through the present.

8.     Plaintiff Member Frank Ingram ("Ingram") resides at 3635 Crossvale Road, Lithonia, Georgia 30038. He became a member of the Local 100's Retirees Association and a participant in its Plan within the meaning of 29 U.S.C. § 1002(7) and certificate holder under the Policy on or about November, 1986 and remains a member, participant and certificate holder through the present.

9.     Plaintiff Member LaVerne Stuckey ("Stuckey") resides at 645 Marion Avenue, Ocala, Florida 34473. He became a member of the Local 100's Retirees Association and a participant in its Plan within the meaning of 29 U.S.C. § 1002(7) and certificate holder under the Policy on or about February, 1993 and remains a member, participant and certificate holder through the present.

10.    Plaintiff Member Maurice Schierman ("Schierman") resides at 95-08 Queens Blvd., Apt. 5D, Rego Park, New York 11374. He became a member of the Local 100's Retirees

- 4 -

Association and a participant in its Plan within the meaning of 29 U.S.C. § 1002(7) and certificate holder under the Policy on or about December 30, 1995 and remains a member, participant and certificate holder through the present.

11.    Plaintiff Member Matthew Tarnowski ("Tarnowski") resides at P.O. Box 342, Greenwood Lake, New York 10925-0342. He became a member of the Local 100's Retirees Association, a participant in its Plan within the meaning of 29 U.S.C. § 1002(7) and certificate holder under the Policy on or about 2000 and remains a member, participant, and certificate holder through the present.

12.    JJ Weiser Inc. ("Weiser") is an insurance broker and registered securities representative licensed to provide insurance brokerage services in New York State. Weiser is located at 131 Mineola Boulevard, Mineola, New York, 11501. Weiser is a fiduciary of the employee welfare plan within the meaning of 29 U.S.C. § 1002(21) because it exercises discretionary management and control of Plan assets.

13.    Interboro Mutual Insurance Company ("Interboro") is a mutual insurance company operated pursuant to New York State Insurance Law. Interboro is located at 155 Mineola Boulevard, Mineola, New York 11501. Interboro is a fiduciary of the employee welfare plan within the meaning of 29 U.S.C. § 1002(21) because it exercises discretionary management and control of Plan assets.

14.    Sanford J. Cohen ("Cohen") was at material times the President of Weiser. He resides at 2086 Berkley Lane, Merrick, New York 11566-5514. Cohen is a fiduciary of the employee welfare plan within the meaning of 29 U.S.C. § 1002(21) because he exercises discretionary management and control of Plan assets.

- 5 -

15.    Harvey T. Gluck ("Gluck") is the Vice President of Weiser. He resides at 573 Gifford Avenue, Oceanside, New York 11572-4610. Gluck is a fiduciary of the employee welfare plan within the meaning of 29 U.S.C. § 1002(21) because he exercises discretionary management and control of Plan assets.

16.    Michael J. Fitzpatrick ("Fitzpatrick") was the Director of the Retiree Association from 2000 to October 2002. He resides at 3528 Burnwood Point, Lake Ariel, PA 18436.

17.    John Meehan ("Meehan") was the Director of the Retiree Association from 1990 to 2000. He resides at 2011 Academy Boulevard, Cape Coral, Florida 33990.

## CLASS ACTION ALLEGATIONS

18.    The Plaintiffs bring the causes of action, *infra*, pursuant to Federal Rules of Civil Procedure 23 and New York Civil Practice Law and Rules Section 901, on behalf of themselves and all participants and beneficiaries in the Plan and the Policy. The proposed class consists of all participants and beneficiaries who were participants in the Plan and certificate holders under the Policy.

(a) The class is so numerous that joinder of all members is impracticable. The Class consists of more than 8,000 persons.

(b) There are questions of law or fact common to the classes. The questions common to the Class include but are not limited to whether or not the Defendants have breached their obligations owed to the members of the class by concealing from and failing to advise the class that the premiums they were paying for the insurance they received were grossly disproportionate to the actual claims and expenses under the policy, by failing to insure that dividends were paid to the policy holders and certificate holders

and by paying and receiving kickbacks to certain officers of Local 100 and the Retirees Association to ensure their acquiescence to their exorbitant profits.

(c) The claims of the representative parties are typical of the claims of each class. Each of the Individual Plaintiffs was a participant in and a certificate holder of the insurance plans maintained by the Defendants. The Defendants have acted commonly with respect to all of the members of the class.

(d) The representative parties will fairly and adequately protect the interests of each class. The Individual Plaintiffs have retained competent counsel and have acted and intend to act prudently with respect to the interests of the classes. The amounts paid by the Individual Plaintiffs as premiums under the policy are identical to the amounts paid as premiums by other similarly situated class members.

(e) A class action is a superior method for a fair and efficient adjudication of the rights of the individual plaintiffs. A class action will avoid duplication and the risk of conflicting results that would occur if the 8,000 individual plaintiffs were to maintain separate actions to determine their rights and remedies.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

19.    On or about January 1, 1978, the Transport Workers Union obtained an insurance policy from Weiser and Interboro entitled "Limited Medical Expense and Accidental Death and Dismemberment Policy" that promised certain benefits to members of the Retiree Association that were certificate holders under the Policy.

20.    The Retirees Association has approximately 8,000 members and all of them are certificate holders in the Policy offered by Weiser and Interboro.

- 7 -

21.    Retiree Association members pay dues of $75 per year for family membership and dues of $45 per year for a single membership. Of that amount, Weiser receives $65 per year for each participating family and $35 per year for each single participant as premiums for benefits through Interboro. The total premiums paid per year to Weiser and Interboro by the Retirees Association is approximately $350,000.

22.    The Weiser/Interboro Policy provides several lines of coverage. Part I offers reimbursement for out of pocket costs for blood replacement (currently up to $25), cost of oxygen and the rental of crutches, wheelchairs, and hospital equipment for home use. Part II offers accidental death and dismemberment coverage which is currently in the amount of $2,000. Part III offers Hospital Income Benefits of $75 per week for stays in acute care hospitals and $37.50 for up to four weeks of convalescent care. Further, approximately 85 Retirees pay an additional $240 per year to Weiser/Interboro and receive a higher scale of benefits.

23.    The benefits offered under the Plan and Policy do not provide a meaningful benefit to participants in the Plan and Policy in comparison to the premiums charged.

24.    Weiser/Interboro did not provide the Plaintiffs with claims and expense experiences for the years 2001, 2002, and 2003 until January 8, 2004.

25.    In 2001, there were 250 claims under the Policy for which the Defendants paid a total of $41,842 in claims. The Defendants did not furnish the Plaintiffs with information regarding any mailing or administrative expenses for the 2001 year.

26.    In 2002, there were 163 claims under the Policy for which the Defendants paid a total of $16,047 in claims. The Defendants did not furnish the Plaintiffs with information regarding any mailing or administrative expenses for the 2002 year.

- 8 -

27.     In 2003, there were 150 claims under Policy for which the Defendants paid a total of $14,257 in claims. In addition, the Defendants claimed mailing expenses of $7,950 for the 2003 coverage year.

28.     The total claims experience and expenses reportedly incurred by the Defendants for those three years totaled $80,096. The Plaintiffs, on the other hand, paid premiums of approximately $1,050,000 to Weiser/Interboro for those same three years. Since 1991, Defendants have realized millions of dollars in unconscionable profits by retaining over 80% of the premiums paid under the policy, by failing to pay dividends to the policy holders and by misrepresenting and failing to advise the Plaintiffs of their actual expenses under this policy.

29.     An undated Letter of Engagement between Weiser, Interboro and the Retirees Association sent to Mahoney in 2003 purports to reflect an agreement between the Retirees Association, Weiser and Interboro. It states that the Transport Workers Union is charged annual premiums to pay for hospital income and a limited medical expense policy. It further provides that Weiser agrees to provide the billing and mailing services as well as a billing service, claim service and related software support.

30.     Interboro is a mutual insurance company and as such is required by the State Insurance Law to pay dividends to policy holders on a fair and reasonable basis.

31.     Defendants Meehan and Fitzpatrick were fiduciaries with respect to the Plan within the meaning of 29 U.S.C § 1002(21)(A) during the periods in which they were Directors of the Retiree Association because they each (i) exercised discretionary authority or discretionary control respecting management of the Plan and exercised authority and control respecting management or disposition of Plan assets and (ii) exercised discretionary authority or discretionary responsibility in the administration of the plan. Specifically, they signed checks to participants for benefits from the Plan, paid premiums to Weiser and Interboro from the Plan

- 9 -

and played a dominant role in determining which bills the Plan would pay. Further, they determined whether the Plan would continue to utilize Weiser and Interboro to provide benefits to Plan participants.

32.    Defendants JJ Weiser, Interboro, Sanford, and Gluck are fiduciaries with respect to the Plan within the mean of 29 U.S.C. § 1002(21)(A) because the Defendants each (i) exercised discretionary authority respecting management of the Plan and exercised authority and control respecting the management and disposition of Plan assets and (ii) the Defendants exercised discretionary authority and responsibility in the administration of the Plan. Specifically, the Defendants controlled the Plan regarding the Policy's premiums, enrollment, claim determinations, solicitation of membership and dividends.

33.    On or about October 8, 1991, Weiser and Interboro, by their agent S. Weiser, contributed a portion of the premiums paid to Weiser in the amount of $1,000.00 to a reelection campaign for the then President of Local 100, Sonny Hall. The money was paid by Weiser to John Meehan. On information and belief, such payments and other gifts continued from 1991 through a point in 2002 during the times in which agents and representatives of Hall controlled the operation of the Retirees Association. At no time were the members of Local 100 members of the Retirees Association or the Plaintiff class of certificate holders informed that Weiser and Interboro were providing kickbacks to the officers of Local 100.

34.    From 1990 to 2000, Meehan was the Director of the Retirees Association. During those years, Meehan also served as a campaign assistant for Hall and his political allies. During those years, Meehan took gifts and benefits from the other Defendants both to divert to internal union political campaigns and to utilize for himself and to reward himself for continuing the payment of premiums to Weiser and Interboro.

35.    From 2000 to October 2002, Fitzpatrick was the Director of the Retirees Association. During those years, Fitzpatrick also served as a campaign assistant for Hall and his political allies. During those years, Fitzpatrick took gifts and benefits from the other Defendants both to divert to internal union political campaigns and to utilize for himself and to reward himself for continuing the payment of premiums to Weiser and Interboro.

36.    On or about October 2002, at the time Fitzpatrick was aware he would be replaced as the Director of the Retirees Association, he reported a "break-in" as having occurred at the offices of the Retirees Association. The unknown parties responsible for this break-in were reported to have ransacked and stolen files from the Retirees Association. On information and belief, this "break-in" was staged to allow Defendants to cleanse the Retirees Association files of evidence relating to the kickbacks and gifts provided to the Director of the Association and to Hall and his political allies.

37.    Weiser, Cohen, and Gluck breached their fiduciary duty by actively concealing from and by failing to inform the Plaintiffs that the premiums paid for the Policy were grossly in excess of the benefits paid under the policy and any expenses incurred as a result of the policy.

38.    Local 100 has been injured by this fiduciary breach because it has been obligated to subsidize the operation of the Retirees Association from its general revenues to replace in part the Association dues diverted from the Association by these excessive premiums.

39.    The Retirees Association has been injured by this fiduciary breach because it has paid the vast bulk of its revenue from member's dues to Weiser/Interboro instead of being able to utilize those monies to provide better insurance or other programs for its membership.

40.    Plaintiffs Allman, Beaver, Cleveland, Ingram, Stuckey, Schierman, Tarnowski and the class they represent, have been injured by this fiduciary breach because they have paid

grossly excessive premiums for the Policy and because they have been deprived of the additional

benefits or returned dividends they should have received as policy holders.

      41.     Each and every allegation of paragraphs 1 through 39 is incorporated by reference

into each of the causes of action set forth below.

## AS AND FOR A FIRST CAUSE OF ACTION FOR
## BREACH OF FIDUCIARY DUTY

      42.     The Defendants are fiduciaries of the Plan who:

      (a)     Failed to discharge their fiduciary duty with respect to the Plan solely in

the interest of the participants and beneficiaries and for the exclusive purpose of providing

benefits to participants and beneficiaries in violation of ERISA Section 404(a)(1)(A), 29 U.S.C.

§ 1104(a)(l)(A);

      (b)     Failed to discharge their fiduciary duty with respect to the Plan solely in

the interest of the participants and beneficiaries and with the care, skill, prudence and diligence

under the circumstances then prevailing that a prudent person acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like character and with

like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

## AS AND FOR A SECOND CAUSE OF ACTION FOR
## BREACH OF FIDUCIARY

      43.     By the conduct described in the paragraphs above, Defendants have violated

ERISA Section 405, 29 U.S.C. § 1105, in that they:

      (a)     Knowingly participated in and knowingly undertook to conceal acts and

omissions of each other in violation of ERISA Section 405(a)(1)(A), 29 U.S.C. § 1105(a)(1);

      (b)     Failed to comply with Section 404(a)(1), 29 U.S.C. § 1104(a)(1) enabling

one another to breach their fiduciary duties in violation of ERISA Section 405(a)(2), 29 U.S.C. §

1105(a)(2); and

(c)    Knowing of the breaches of each fiduciary, failed to make reasonable

effort to remedy the breach in violation of ERISA Section 405(a)(3), 29 U.S.C. §1105(a)(3).

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## BREACH OF FIDUCIARY

44.    By the conduct described in the paragraphs above, including failing to safeguard

assets of the Plan, entering into long-term imprudent insurance contracts with Weiser and

Interboro, accepting gifts and benefits from Weiser and Interboro and by using plan assets to

further the political careers of certain Local 100 union officers Defendants Meehan and

Fitzpatrick have violated ERISA Section 406, 29 U.S.C. § 1106, in that they:

(a)    Caused the sale or exchange of property between the Plan and parties in

interest, in violation of ERISA Section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A);

(b)    Caused the Plan to use its assets to furnish goods and services from the

Plan to parties in interest in violation of ERISA Section 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);

and

(c)    Caused the Plan to transfer assets of the Plan to parties in interest in

violation of ERISA Section 406 (a)(1)(D), 29 U.S.C. §1106(a)(1)(D).

## AS AND FOR A FOURTH CAUSE OF ACTION FOR
## BREACH OF FIDUCIARY DUTY

45.    Defendants Weiser, Cohen, and Gluck have breached their fiduciary duty to the

Retirees Association and its members including the Individual Plaintiffs and Local 100 and its

members under the New York State Insurance Law § 2120(a) and (c). Weiser, Cohen and Gluck

were instrumental in the administration of the Retirees Association and in control of its affairs

concerning the Policy. By their dominance of the Retiree Association's Policy, Weiser, Cohen

and Gluck entered into an exceptional and particularized situation in which through their conduct

- 13 -

or by implied contract, the Defendants assumed or acquired duties in addition to those fixed at common law.

46.    The Defendants controlled all aspects of the Policy, writing letters to members, collecting premiums, handling enrollment, and making claim determinations. In addition to the normal duties and responsibilities of a broker, Weiser, Cohen and Gluck or their agents assumed a responsibility for soliciting members of the Association, undertook to communicate with members concerning the Policy, established the benefits due under the Policy and determined whether to seek a dividend under the Policy. This created a "relationship of trust" between the insureds and an insurance broker giving rise to a duty to disclose information, specifically the overpayment of premiums and right to dividends.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR DECEPTIVE BUSINESS PRACTICES

47.    Defendants have committed deceptive business acts and engaged in deceptive business practices under the New York State's General Business Law § 349(a) by imposing grossly excessive  premiums charges for the Policy and by actively concealing from and by failing to inform the Plaintiffs that the premiums paid for the Policy were grossly in excess of the benefits paid under the policy and any expenses incurred as a result of the policy. The information provided to Plaintiffs and withheld from Plaintiffs by Defendants was misleading in a material respect.

48.    Defendants have further engaged in deceptive business practices and acts by paying kickbacks to officers of Local 100 and the Director of the Retirees Association under the Hall administration that were concealed from the members of Local 100, its Executive Board, and the members of the Retiree Association.

- 14 -

49.    Local 100 has been injured by this fiduciary breach because it has been obligated to subsidize the operation of the Retirees Association from its general revenues to replace in part the Association dues diverted from the Association by these excessive premiums.

50.    The Retirees Association has been injured by this fiduciary breach because it has paid the vast bulk of its revenue from member's dues to Weiser/Interboro instead of being able to utilize those monies to provide better insurance or other programs for its membership.

51.    Plaintiffs Allman, Beaver, Cleveland, Ingram, Stuckey, Schierman, Tarnowski and the class they represent have been injured by this fiduciary breach because they have paid grossly excessive premiums for the Policy and because they have been deprived of the additional benefits or returned dividends they should have received as policy holders.

52.    Plaintiffs also seek recovery of their attorneys fees, interest and costs and such other relief as may be available under New York State law to remedy unfair business practices.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

53.    Defendants have been unjustly enrichment by obtaining a benefit in the form of grossly inflated premiums from the Plaintiffs without adequately compensating the Plaintiffs for conferring that benefit. The Plaintiffs conferred a benefit on the Defendants by purchasing the Policy at a premium rate in excess of its real value. By overcharging the Plaintiffs and failing to provide the Plaintiffs with dividends, the Defendants have obtained a benefit without adequately compensating the Plaintiffs. Defendants Cohen and Gluck have received a commission, profits, and/or monies from the excessive premiums. It is unjust for Weiser, Interboro, Cohen, or Gluck to retain the exorbitant consideration they took from Plaintiffs.

54.    Defendants should not be permitted to retain the excessive premiums they took from the Plaintiffs under principles of equity and good conscience.

- 15 -

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR
## BREACH OF CONTRACT

55.    Defendants Weiser, Cohen, and Gluck, by themselves and as agents for Interboro, were parties to a contract with the Plaintiffs under which they agreed to fully disclose all relevant information concerning the insurance benefits they supplied to the Plaintiffs and in which they further agreed to provide insurance benefits reasonably related to the amount of premiums being paid by the Plaintiffs.

56.    Defendants Weiser, Cohen and Gluck, by themselves and as agents for Interboro breached that contract by actively concealing from and by failing to disclose to the Plaintiffs that the premiums they were paying for the Policy were grossly excessive compared to the benefits being provided and the expenses incurred.

## AS AND FOR A EIGHTH CAUSE OF ACTION FOR
## BREACH OF IMPLIED CONTRACT

57.    Defendants Weiser, Cohen and Gluck, by themselves and as agents for Interboro were parties to an implied contract with the Plaintiffs under which they agreed to fully disclose all relevant information concerning the insurance benefits they supplied to the Plaintiffs and in which they further agreed to provide insurance benefits reasonably related to the amount of premiums being paid by the Plaintiffs.

58.    Defendants Weiser, Cohen and Gluck, by themselves and as agents for Interboro breached that implied contract by actively concealing and by failing to disclose to the Plaintiffs that the premiums they were paying for the Policy were grossly excessive compared to the benefits being provided and the expenses incurred.

- 16 -

## AS AND FOR A NINTH CAUSE OF ACTION FOR
## ACTUAL FRAUD

59    Defendants Weiser, Cohen and Gluck, by themselves and as agents for Interboro committed actual fraud by submitting false invoices to the Retirees Association, concealing the lack of claims and expenses under these policies, and by failing inform the Retirees Association of the lack of claims, the grossly inflated premiums, or the right to dividends.

60.    Defendants actions resulted in actual fraud against the Plaintiffs in the form of a commission and/or profits, monies from the excessive premiums compared to the benefits received and the expenses incurred.

## AS AND FOR A TENTH CAUSE OF ACTION FOR
## CONSTRUCTIVE FRAUD

61.    Defendants Weiser, Cohen and Gluck, by themselves and as agents for Interboro committed constructive fraud by representing to the Plaintiffs that the premiums paid under the policy were equivalent to the benefits received, the costs of administering the Plan, and a reasonable margin.

62.    Defendants constructive fraud resulted in their extracting from the Plaintiffs excessive premiums payments and obtaining an inflated commission and/or inflated profits.

## AS AND FOR A ELEVENTH CAUSE OF ACTION FOR
## UNCONSCIONABILITY

63.    Defendants actions were unconscionable.  Defendants Weiser, Cohen and Gluck , by themselves and as agents for Interboro assumed a responsibility for soliciting members of the Association, undertook to communicate with members concerning the Policy, established the benefits due under the Policy and determined whether to pay a dividend under the Policy. Weiser, Cohen and Gluck actively concealed from and failed to inform the Plaintiffs that the

- 17 -

premiums paid for the Policy were grossly in excess of the benefits paid under the policy and any expenses incurred as a result of the policy.

64.    The Plaintiffs lacked any meaningful choice in the contract, the insurance premiums, and the services provided by the Defendants. Significantly, Plaintiffs did not participate in negotiating the premium rates for the hospital income and limited medical expense policy. When the current Director of the Retirees Association contacted the Defendants to determine the benefits offered in exchange for the premium payments, he was presented with undated Letter of Engagement between Weiser, Interboro and the Retirees Association in 2003 which purports to reflect an agreement between the Retirees Association and Interboro.

65.    The 2003 Letter of Engagement permits Weiser to control the billing and mailing services as well as the billing service, claim service and related software support. The Letter of Engagement lacks any agreement for Plaintiffs to receive dividends in the event of positive experience of the insured group. The purported Letter of Engagement demonstrates the unconscionable arrangement imposed upon Plaintiffs by Defendants.

## AS AND FOR A TWELFTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

66.    Defendants actions constitute negligent misrepresentation. The Defendants advised the Plaintiffs that the premiums being charged were proportional to the benefits being provided to the retirees. Defendants concealed the lack of claims and expenses under these policies, and failed to inform the Retirees Association of the lack of claims, the grossly inflated premiums, or the right to dividends.

67.    The Plaintiffs relied upon those assurances in continuing these policies. Further, there was a closer degree of trust between the Plaintiffs and the Defendants than the ordinary

buyer and seller, as the Defendants exercised greater control over the administration of the
policy. Defendants' actions caused a loss to the Plaintiffs of approximately $2.1 million.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR
## PERSONAL LIABILITY BY THE CORPORATE OFFICERS

68.    Defendant Officers of JJ Weiser are personally liable for the fraudulent business
activities of Defendant Weiser. Defendant Officers of JJ Weiser participated in and knowingly
solicited members of the Association, undertook to communicate with members concerning the
Policy, established the benefits due under the Policy and determined whether to seek a dividend
under the Policy, with knowledge of Weiser's and Interboro's fraudulent business practices.
Defendant Officers of JJ Weiser participated in the sales effort while actively concealing from
and failing to inform the Plaintiffs that the premiums paid for the Policy were grossly in excess
of the benefits paid under the policy and any expenses incurred as a result of the policy.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray that this Court:

1.    Permanently enjoin Defendants from serving in a fiduciary capacity to any labor
or retiree organization including the Transport Workers Union, Local 100 and its Retiree
Association or any employee benefit plan.

2.    Permanently enjoin the Defendants from engaging in any fraudulent or deceptive
business practices.

3.    Enter judgment on the First through Third Causes of Action under ERISA
requiring the Defendants, jointly and severally, to make restitution to the Retiree Welfare Plan of
assets held by them that were acquired as a result of the breach of fiduciary duty owed plan
participants.

- 19 -

4.     On the Fourth through the Thirteenth Causes of Action, enter judgment against the Defendants, jointly and severally, in favor of Transport Workers Union, Local 100, the Retirees Association, and the individual Plaintiffs and the class they represent of participants in the Limited Medical Expenses and Accidental Death and Dismemberment Policy, in an amount of money equal to the damages they suffered as a result of the conduct by Defendants from 1991 to the present.

5.     Compel Defendants to submit to an audit of the premiums they have received in connection with the policies since 1991 to the present and the benefits they have paid to the Plaintiff class of certificate holders.

6.     Enter an order retaining jurisdiction for the purpose of assuring that Defendants comply in all respects with the orders of this Court.

7.     Enter judgment upon the conclusion of the trial of this action, declaring the rights of the parties.

8.     Award plaintiffs their attorneys fees, litigation expenses and costs.

9.     Grant plaintiffs such other and further relief as is just and equitable.

## JURY DEMAND

Plaintiffs demand a jury trial on each cause of action.

Dated: April 5, 2004

KENNEDY, SCHWARTZ & CURE, P.C.
Attorneys for Plaintiffs

By: _____
Thomas M. Kennedy (TMK-0993)
113 University Place
New York, N.Y. 10003
Tel. (212) 358-1500

- 20 -